IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DWIGHT L. W.,[1] )
)
       Plaintiff, )
)
vs. ) Case No. 19-cv-00012-DGW[2]
)
COMMISSIONER of SOCIAL )
SECURITY, )
)
       Defendant. )

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed an application for DIB in March 2015, alleging disability as of March 24, 2014. Plaintiff was last insured on March 31, 2014. (Tr. 220). After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied the application on May 31, 2018. (Tr. 13-20). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) and Administrative Order No. 240. See, Docs. 8, 17.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred in failing to identify and reconcile apparent conflicts between the vocational expert's (VE) testimony and the *Dictionary of Occupational Titles* (DOT).

2. The ALJ erred in failing to identify the evidentiary basis of her assessment of plaintiff's residual functional capacity (RFC).

## Applicable Legal Standards

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Ibid.* The plaintiff bears the burden of proof at steps 1–4. *Ibid.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner

to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Ibid.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. She

determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of small broad-based intervertebral disc bulge L5-S1; mild multilevel degenerative disc disease of the mid-thoracic spine; and status post ST elevation myocardial infarction, status post cardiac catheter, and stent placement.

The ALJ found that plaintiff had the RFC to perform work at the light exertional level, limited to no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; and occasional stooping, crouching, and crawling. Plaintiff had to avoid concentrated exposure to extreme heat and humidity. Plaintiff could frequently handle and finger bilaterally. He could also occasionally reach overhead, push, and pull with his left non-dominant arm. Based on the testimony of the VE, the ALJ concluded that plaintiff was unable to do his past relevant work, while also making an alternative finding that he was able to do other jobs at the light exertional level which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff, focusing on the relevant period from March 24, 2014, his alleged onset date, to March 31, 2014, the date last insured.[3]

---

[3] An individual is only entitled to DIB if he was "under a disability" within the meaning of the Social Security Act by the date his insured status expired. 20 C.F.R. §§ 404.131(a), 404.320(b)(2); *Pepper v. Colvin*, 712 F.3d 351, 354, 369 (7th Cir. 2013).

1. **Agency Forms**

Plaintiff was born in 1963 and was almost 51 years old on the alleged onset date. (Tr. 52). He previously worked as an operating engineer and had not worked since 2011. (Tr. 225). At the time of his Disability Determination Explanation in July 2015, plaintiff was 5'11" tall and weighed 205 pounds.

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing. (Tr. 29). Plaintiff testified that he was usually able to do laundry without taking any breaks before a March 2014 heart attack. He stated that after the heart attack, he required many breaks just to get through a load of laundry. Plaintiff claimed he was constantly tired after the heart attack and fell asleep frequently during the day, waking up 20 to 30 minutes later due to neck, shoulder, and lower back pain. Plaintiff said that he had neuropathy of his feet and legs with sensations that felt like needles poked his extremities. He indicated that standing for more than 15 to 20 minutes exacerbated the pain and he had to sit down. Plaintiff stated that he needed to change positions every 15 to 20 minutes while sitting because his lower back, legs, and feet became numb. Plaintiff also said he had headaches once or twice a week. (Tr. 36-38).

Plaintiff further stated that he had carpal tunnel and tendonitis in his hands and elbow. He claimed he could not hold anything in his right hand or make a fist with it. (Tr. 40-41). Plaintiff attested to problems with his left knee. Plaintiff stated that despite a "scrape" job on his knee, he was still unable to put any weight on

it. He also had surgery on his left shoulder and arm for a torn rotator cuff and tendon. Before the surgery, plaintiff said he could not lift his arm above his side. After the surgery, plaintiff could move his arm above his side and carry a basket of laundry up the steps. (Tr. 42-43).

The ALJ presented a hypothetical which corresponded to the RFC assessment:

> First at the light exertional level, no climbing of ladders, ropes, or scaffolds. Let me make another adjustment here. All right. Occasional ramps and stairs; occasional stooping, crouching, and crawling; no concentrated exposure to extreme heat or humidity; frequent handling and fingering; let's see, occasional overhead reaching, pushing, and pulling with the left non-dominant upper extremity.

(Tr. 47). After stating that this person could not perform at the medium exertion level, which encapsulated plaintiff's past relevant work, the VE stated that the person could perform at the light exertional level. Regarding jobs at the light exertional level, the VE stated:

> These are going to be light, unskilled, SVP2. Now, Your Honor, regarding three of these, the DOT lists these as frequent reaching, and the DOT does not distinguish reaching overhead from reaching in other directions. So that part will be based on my professional opinion, and I do not believe that they would exceed occasional overhead reaching with the left non-dominant hand.

The ALJ then asked the VE if her testimony was consistent with the DOT outside of her opinion on overhead reaching. She answered, "[y]es." (Tr. 48).

### 3. Medical Records

In August 2013, plaintiff went to the hospital two days after he fell and hit his head. Dr. Shivaram Kalugotla ordered a CT scan of plaintiff's head. The CT scan revealed a fractured nasal bone, right maxillary sinus, and inferior orbital wall. (Tr.

329-336). In February 2014, plaintiff fell again. A CT scan of the pelvis and abdomen showed small, broad-based intervertebral disc bulge of the spine at the L5 to S1. (Tr. 347). At the time, plaintiff was taking Topamax, ranitidine, Fiorinal, gabapentin, and Advair. (Tr. 344). He was discharged the same day. (Tr. 346).

Plaintiff complained of headaches after his first fall and into March 2014. (Tr. 336, 344, 353). Plaintiff also complained of right rotator cuff pain and knee pain that he described as severe to moderate in March 2014. (Tr. 362). Plaintiff had previously had surgery in both areas. (Tr. 362, 807, 1088).

## Analysis

Plaintiff argues that ALJ failed to sufficiently identify and reconcile conflicts between the VE's testimony and the DOT. He contends that the VE's testimony conflicted with information in the DOT because the DOT description for the jobs the VE identified involved frequent reaching and the VE went outside the bounds of the DOT to state that despite the frequent reaching description, in her professional opinion, the jobs would not involve more than occasional reaching overhead with the left non-dominant hand. Doc. 12, p. 2-4.

At step five of the sequential analysis, if the claimant is not able to perform her past work, the Commissioner bears the burden of showing that she can perform other jobs that exist in significant numbers in the economy. In making the step five determination, the ALJ generally relies on the DOT for information about the typical

characteristics of jobs as they exist in the economy.[4] An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

For each job title, the DOT specifies whether certain physical and mental activities are required, and, if so, the frequency with which they are required. The DOT does not, of course, speak to every possible aspect of the job title. When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT; if so, the ALJ must resolve those conflicts. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). The ALJ asked the VE about conflicts, and none were identified.

Plaintiff argues that there was a conflict because the VE testified about limitations that are not addressed in the DOT. Plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT at the evidentiary hearing.[5] Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR

---

[4] The agency is developing a replacement for the DOT, referred to as the "Occupational Information System." This system will be the "primary source of occupational information SSA staff use in our disability adjudication process." This system is projected to be implemented in 2020. http://www.ssa.gov/disabilityresearch/occupational_info_systems.html, visited on July 16, 2019.

[5] Plaintiff is represented by a different attorney in this Court.

00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman*, 546 F.3d at 463, citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).

Defendant argues that there is no conflict at all where the VE testifies about subjects not addressed in the DOT. The Court agrees. The Seventh Circuit has found that there was a conflict where the VE testified about a topic addressed in the DOT (exertional level), but there was not a conflict where the DOT was silent (sit/stand option). *Collins v. Berryhill*, 743 F. App'x 21 (7th Cir. 2018); see also *Zblewski v. Astrue*, 302 F. App'x 488 (7th Cir. 2008). The VE here identified an area where the DOT was silent about a limitation, in this case reaching overhead as a part of the frequent reaching description, and then gave her professional opinion on the frequency required for this movement as it specifically related to plaintiff's limitations. This opinion filled a gap where the DOT was silent. Therefore, plaintiff has not identified a legitimate conflict, much less an apparent one.

Plaintiff's other argument fails to turn the tables in his favor. Plaintiff claims that the ALJ equated his minimal activity with the capacity to perform substantial gainful activity. The ALJ cited to SSR 16-3p, which supersedes the previous SSR on assessing a plaintiff's credibility. SSR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Under SSR 16-3p, the ALJ must carefully consider the entire case record and evaluate the "intensity and persistence of an individual's symptoms to determine the extent to which the

symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029 at *2. SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529, including a claimant's daily activities. The Seventh Circuit has cautioned against equating the ability to engage in limited daily activities with an ability to work. *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). The Seventh Circuit has called improper consideration of daily activities "a problem we have long bemoaned, in which administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore*, 743 F.3d at 1126.

First and foremost, it must be mentioned that the record in this case is sparse due to the relevant one-week period to prove plaintiff was under a disability. Although the Function Report from 2015 was discussed by the ALJ, the plaintiff, and the defendant here, the functional claims it provides are not within the specific period and any analysis of it is irrelevant to the plaintiff's claims. As to the relevant period, the ALJ recounted plaintiff's medical records and testimony in manner sufficient to build a logical bridge to his conclusion that plaintiff physically functioned to a greater ability in the specific time frame than he has led on. The ALJ discussed plaintiff's headaches, neuropathy, knee pain, and shoulder pain, along with his emergency room visits and February 2014 CT scan. As the ALJ emphasized, no examining source observed how any of these conditions would significantly limit plaintiff within the

period. The ALJ did, however, limit plaintiff's functional capacity based on his subjective symptom allegations. The ALJ did not err in this regard.

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's applications for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: July 25, 2019.**

*Donald Wilkerson*

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**